## Pioneer Fire-Proofing Company v. James Clifford.

### Gen. No. 4,839.

1. INFAMOUS CRIME—*what raises presumption of identity between witness sought to be impeached and person named in the record of conviction.* The identity of the name of a witness sought to be impeached with the name of a person shown to have been convicted by the record offered, *prima facie* establishes that the two persons are the same.

2. INFAMOUS CRIME—*what competent to establish conviction of, by way of impeachment.* A record of the conviction of an infamous crime sufficiently establishes the same for purposes of impeachment, notwithstanding no return of an indictment is shown.

3. INFAMOUS CRIME—*when record shows conviction of, for purposes of impeachment.* A record for purposes of impeachment sufficiently shows the conviction for the crime of rape where in the margin of the title of the record the words "indictment for rape" are employed.

4. AD DAMNUM—*effect of mention of amount of, in instruction.* The practice of referring in an instruction to the amount of the *ad damnum* is disapproved, but such a reference is not always reversible error.

5. FELLOW-SERVANT—*when negligence of, will not preclude recovery.* The negligence of a fellow-servant will not preclude a recovery where the negligence of the master contributed to the injury if such injury would not have resulted but for the negligence of such master.

Action in case for personal injuries. Appeal from the Circuit Court of LaSalle county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

McDOUGALL, CHAPMAN & BAYNE, for appellant.

BUTTERS, ARMSTRONG, & FERGUSON, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Appellee was injured by being caught between two cars of appellant on its tram track near its clay pit east of the city of Ottawa, where he was at work for appellant, and sued appellant to recover damages, and he

had a verdict and a judgment. The cause was before us at the October term, 1904. Pioneer Fire-Proofing Co. v. Clifford, 118 Ill. App. 457. After that decision, there was another trial below, and a judgment for appellee. The case was again before us at the October term, 1905, Pioneer Fire-Proofing Co. v. Clifford, 125 Ill. App. 352, and afterwards this trial below, resulting in a verdict and judgment for appellee for $5,000 and this appeal.

But one important question on the ruling of the court on the evidence is presented, and that was respecting the attempted impeachment of the witness Eugene Myers, by proof of his conviction of an infamous crime. This question is discussed at length in Fire-Proofing Co. v. Clifford, 125 Ill. App., *supra.* Before the present trial the parties stipulated that the testimony of the witnesses might be read from either of the former records, and the testimony of the witness Myers was read from the record of the first trial and not from the second. It contained no testimony by Myers that he served a term in the penitentiary under a conviction had in the LaSalle county Circuit Court. Appellee offered in evidence in rebuttal of Myer's testimony, a judgment showing Myer's conviction of rape, which is an infamous crime. The court admitted it in evidence over the objection of appellant. Appellant now contends that such ruling was erroneous in three respects. First, the return of an indictment should have been shown. Doubtless this would be true if this conviction could be proved only by the record, but under sec. 1, chap. 51, Hurd's R. S. 1905, as construed by the Supreme Court in Gage v. Eddy, 167 Ill. 102, it may be proved orally, and the witness compelled to testify thereto. Manifestly then, all Myers could have stated if he had been interrogated on the subject was that he was convicted of the crime of rape in the LaSalle county Circuit Court He would not be able to testify to the fact that the grand jury were im-

paneled and sworn, and returned an indictment against him. We think that, under the section of the act above referred to, it was not necessary to show a return of an indictment.

Second, it is said that this judgment does not show of what Myers was convicted, except that he was found guilty as charged in the indictment. The margin of the title of that record says, "indictment for rape," and in People v. Murphy, 188 Ill. 144, this is held to be sufficient.

Third, it is said there is no proof that the person so convicted was the witness Myers. The Christian name of the person shown to have been convicted by the record introduced in evidence and the name of the witness Myers was the same. The trial and conviction shown in the record was in LaSalle county, and Myers testified that he lived in LaSalle county. The names are identical. We are of the opinion that the legal presumption is that they were one and the same person.

There was only one instruction given for appellee, and that was on the measure of damages. Appellant complains that it improperly influenced the jury by authorizing a verdict for any sum not exceeding $20,-000, the amount of the *ad damnum* in the declaration. In East St. Louis Connecting Railway Co. v. O'Hara, 150 Ill. 580, it is said "Although such reference to the amount of the *ad damnum* in the declaration is not to be commended, still we do not think that it constituted such error as calls for a reversal of the judgment. That the amount of the *ad damnum* was the maximum beyond which the jury could not go, is unquestionably a correct legal proposition, and we cannot suppose that any jury of ordinary intelligence would regard such reference alone as any intimation by the court that the damages to be assessed should reach or approximate that sum." This was followed in Central Railway Co. v. Bannister, 195 Ill. 52, and in Kellyville Coal Co. v. Strine, 217 Ill. 516. As the jury in fact assessed appellee's damages

at $5,000, we do not think they could have been misled
or unduly influenced by the instruction.

Appellant offered forty-seven instructions. The rules
of law governing the rights of the parties were very
simple, and the practice of presenting such a mass
of legal propositions in so simple a case cannot be
approved. Indeed the apparent object was to in-
duce the court to refuse some erroneously. The first
instruction given for appellant and that defining fellow-
servants and the instruction defining assumed risk cov-
ered substantially every proposition to which appellant
was entitled, except those relating to the method of
judging the weight of the evidence and like questions.
The record shows that the trial court instructed the
jury at least twice on every proposition involved in the
trial, and the subsequent refusal by the court of many
other instructions offered by appellant where the same
propositions were repeated again and again in differ-
ent words, meets our approval. Upon a careful examina-
tion, we are unable to find that appellant was deprived
of any proposition of law which it was entitled to have
given to the jury, but if it was, it should be attributed
to the course of counsel for appellant in overwhelming
the court with legal propositions. Complaint is made
because, of several instructions offered by appellant
on a given subject, the court did not select the best,
but gave others not so well drawn. This we deem the
fault of counsel and not of the court.

No good purpose would be served by a statement in
detail of the averments of the declaration. It is suffi-
cient, in our opinion, to say that the only material and
contested questions of fact appearing in this record
are, whether appellee was injured because of a risk
which he assumed; whether he was injured because of
his own negligence; whether he was injured because
of the negligence of William Foster, also an employe
of appellant, in handling cars upon its tracks; and if
so, whether Foster and appellee were fellow-servants,

so as to relieve appellant from the consequences of Foster's negligence.

Appellee was severely and permanently injured and the amount of the damages is not open to question if the facts appearing in evidence create a cause of action.

It appears from the evidence that appellee was injured on appellant's tracks at its clay pit east of the city of Ottawa. It had, at the west end of the clay pit, one main track which led up into the clay pit and a switch track on the north side. Cars were loaded with clay and brought down over the north switch track, passed to the end of the west switch, and then were drawn back by horse a short distance on the main track, and more cars were then brought down from the north switch track and taken east on the main track until a train of eight to fifteen loaded cars was made up, when a motor came from Ottawa and hauled them away. On Monday morning, May 18, 1903, appellee had started to pull with his horse two loaded cars east over the switch on the main track. A car came down slowly by gravity on the north switch track and struck his car. He turned the horse south so that it did not hit the horse, but it struck the car, which was not yet away from the place where the switch track and the main track rails ran near together. Appellee went in between the east end of his cars and the west end of this car that had come down by gravity, to unhook the horse, and while in that position, a loaded car was sent down the north switch track and came against the car just previously let down, with such force as to catch him between the two, breaking his leg and otherwise injuring him. Two hundred and nine feet up the north switch track from the west switch, was a level place where loaded cars stood when the brake was set. This was higher than the west switch and the cars were taken down from that point to the switch when needed, sometimes by gravity alone, leaving the brake set, and

sometimes a horse was attached to pull them slightly, the driver riding and holding the brake with his hand. There was a place where the brake could be fastened back, and when the shoe was in good condition, this would hold the car so that it would go down the incline slowly. If, however, the brake shoe was badly worn, then it might not hold the car. Appellee's chief claim is, that the brake shoe of the car whose rapid descent caused his injury was so much worn that it did not set close against the wheel, and did not sufficiently retard the progress of the car down the slope; that he discovered this defect on Saturday before the accident and called the attention of the foreman or superintendent of the pit to it, and that the superintendent examined and felt of it and said he would have it repaired when it went to the works in the city of Ottawa with its load. Appellee also claims that he supposed that car went in that day to the works, and that it had been repaired. The accident happened on Monday and, appellee claims, very shortly after seven o'clock, and that he had just reached the west end of the grounds and hitched on to the first set of cars to go to the place where the train was made up. Appellee had corroborative testimony to the effect that the shoe was worn on the car which caused the injury, and that if it had not been worn the car would not have come down with enough speed to do harm. On the other hand, appellant claims that appellee had been in different parts of the pit that morning for some time before this accident occurred; that this was one of the assumed risks; that the car should have been blocked up on the level place at station 219, either by appellee or by one Foster; that the car was pushed over the incline and started down by Foster; that the injury was caused either by the negligence of appellee or of Foster, either in not blocking the car or in pushing it over the incline and starting it down; that if appellee was injured by his own negligence, he cannot recover, and if by the negligence of Foster, he cannot

recover because he and Foster were fellow-servants. There was proof by appellee tending to show that it was not the practice, nor had there ever been an order to block the cars; and there was other proof that the men, including appellee, had received orders to block the cars.

We conclude that appellee was entitled to rely upon his employer furnishing him with a reasonably safe car equipped with reasonably safe brakes and brake shoes, and that if this brake shoe was as worn and insufficient as appellee's testimony tended to show that it was, he could not be charged with the assumption of the risk, and the jury were warranted in finding appellant guilty of negligence contributing to the injury. If, then, they found that the negligence of Foster also contributed to the injury and that Foster was a fellow-servant with appellee, still appellant would be liable, for the reason that if an injury results from the negligence of the master combined with the negligence of a fellow-servant, and the injury would not have occurred had the master used due care for the safety of the injured servant, the master is liable. Pagels v. Myers, 193 Ill. 172; Armour v. Golkowska, 202 Ill. 144.

There is testimony which appellant earnestly insists that appellee and his principal witnesses gave falsely, but there is evidence to corroborate them. Three juries have found the issues for appellee, and have found that appellant was liable. Three different trial judges have approved such a finding. The evidence is conflicting, and if we should sustain all of appellant's contentions on the evidence, all we could decide would be that the preponderance of the evidence was with appellant. After three trials, we do not feel disposed to disturb a third verdict on the merits of the case, inasmuch as there is sufficient evidence to support appellee's theory of appellant's liability.

The judgment is therefore affirmed.

*Affirmed.*